IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **UMB BANK, N.A.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| **MICHAEL W. COLEMAN,** | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff, UMB Bank, N.A. ("Plaintiff"), for its Complaint against Defendant Michael W. Coleman ("Defendant"), states and alleges as follows:

**Preliminary Statement**

1. This action arises from Defendant's failure to comply with a guaranty executed in favor of Plaintiff. Plaintiff extended loans to Express Grain Terminals, LLC ("EGT"), Express Processing, LLC ("EP"), and Express Biodiesel, LLC ("EB," and together with EGT and EP, the "Borrowers"), which loans are guaranteed by Michael W. Coleman and non-party John R. Coleman. As of August 22, 2022 the Borrowers owe Plaintiff at least $38,514,005.81, plus incurred and incurring attorneys' fees and costs of enforcement, which sum was guaranteed by the Defendant.

2. On September 29, 2021, Borrowers and John R. Coleman filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Their cases are pending as *In re Express Grain Terminals*, Case No. 21-11835, *In re John Coleman*, Case No. 21-11833, *In re Express Biodiesel, LLC*, Case No. 21-11834, and *In re Express Processing, LLC*, Case No. 21-11835, all in the U.S. Bankruptcy Court for the Northern District of Mississippi (the "Bankruptcy Court").

3. Due to the bankruptcy filings by John Coleman and Borrowers, this action is brought solely against Defendant Michael W. Coleman.

## The Parties

4. Plaintiff is national banking association organized and existing under the laws of the United States of America. Plaintiff's corporate headquarters are located in Kansas City, Missouri.

5. Defendant Michael W. Coleman is an individual who resides in Mississippi and may be served at 57465 County Road 559, Greenwood, Mississippi 38930.

## Jurisdiction and Venue

6. For purposes of subject matter jurisdiction, Plaintiff is a citizen and resident of Missouri.

7. Defendant is a citizen and resident of Mississippi.

8. The parties are of diverse citizenship.

9. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, the Defendant is subject to personal jurisdiction in Missouri, and the Defendant agreed that all actions involving his guaranty to Plaintiff "shall be instituted and litigated only in courts having situs in the City of Kansas City, Missouri. The Guarantor hereby consents to the exclusive jurisdiction and venue of any State or Federal Court located and having its Situs in Kansas City, Missouri and waives any objection based on forum non conveniens." Exhibit H, *infra*, at 7.

## Factual Allegations

12. On or about December 17, 2020, Borrowers executed a Fourth Amended and Restated Loan and Security Agreement (as amended, the "Loan Agreement") with Plaintiff. A true and correct copy of the Loan Agreement is attached hereto as Exhibit A.

13. Pursuant to the Loan Agreement, Plaintiff made an unconditionally cancellable revolving loan to Borrowers in the original maximum principal amount of $40,000,000 ("Revolving Loan"), and a term loan to Borrowers in the original principal amount of $35,000,000 (the "Term Loan," and collectively with the Revolving Loan, the "Loans").

14. Under the Loan Agreement as initially documented, the maximum principal amount available under the Revolving Loan was subject to automatic seasonal adjustments, and was initially set to decrease to $30,000,000 for the period from May 1 through May 31, 2021, and then $25,000,000 for the period from June 1 through the maturity date of the Revolving Loan, which is October 31, 2021.

15. The Loans were modified numerous times pursuant to the following amendments executed by Borrowers with Plaintiff (collectively, the "Amendments"):

   a. First Amendment to Fourth Amended and Restated Loan and Security Agreement dated as of February 2021 (the "First Amendment"), a true and accurate copy of which is attached hereto as Exhibit B;

   b. Second Amendment to Fourth Amended and Restated Loan and Security Agreement dated as of April 30, 2021 (the "Second Amendment"), a true and accurate copy of which is attached hereto as Exhibit C;

   c. Third Amendment to Fourth Amended and Restated Loan and Security Agreement dated as of May 31, 2021 (the "Third Amendment"), a true and accurate copy of which is attached hereto as Exhibit D; and

   d. Fourth Amendment to Fourth Amended and Restated Loan and Security Agreement dated as of June 30, 2021 (the "Fourth Amendment"), a true and accurate copy of which is attached hereto as Exhibit E.

16. Under the Second Amendment, Third Amendment, and Fourth Amendment, the seasonal adjustment for the Revolving Loan was amended and ultimately removed so that the commitment under the Revolving Loan remained $40,000,000 through the maturity date.

17. In connection with the Revolving Loan, Borrowers executed an Amended and Restated Revolving Note dated December 17, 2020 in the original principal amount of $40,000,000 (the "<u>Revolving Note</u>"). A true and accurate copy of the Revolving Note is attached hereto as <u>Exhibit F</u>.

18. In connection with the Term Loan, Borrowers executed an Amended and Restated Term Note dated December 17, 2020 in the original principal amount of $35,000,000 (the "<u>Term Note</u>"). A true and accurate copy of the Term Note is attached hereto as <u>Exhibit G</u>. The Revolving Note and the Term Note shall be collectively referred to herein as the "<u>Notes</u>."

19. As security for Borrowers' obligations to Plaintiff under the Notes and the Loan Agreement, Borrowers granted Plaintiff a continuing security interest upon all property of Borrowers, whether then owned or existing or thereinafter created, acquired, or arising and wherever located, as described more particularly in Sections 6.1 of the Loan Agreement (the "<u>Personal Property Collateral</u>"). Exhibit A, § 6.1.

20. Plaintiff properly perfected its security interest in the Personal Property Collateral by filing financing statements with the Mississippi Secretary of State.

21. As further security for Borrowers' obligations to Plaintiff under the Notes and Loan Agreement, EGT granted Plaintiff security interests in certain hedging accounts (the "<u>ADM Accounts</u>") held at ADM Investor Services, Inc., pursuant to that certain Security Agreement and Assignment of Hedging Account (the "<u>Pledge Agreement</u>").

22. As further security for Borrowers' obligations to Plaintiff under the Notes and Loan Agreement, EGT also granted Plaintiff a first-priority security interest in certain real and personal property owned by EGT, pursuant to that certain Deed of Trust, Assignment of Leases and Rents and Fixture Filing from EGT for the benefit of Plaintiff, dated November 13, 2015 and filed of record November 13, 2015 in Deed of Trust Book 804, Page 97 in the Chancery Clerk's Office for Leflore County (as amended and modified, the "<u>Greenwood and Minter City Deed of Trust</u>"). The real property that is subject to the Greenwood and Minter City Deed of Trust is described more particularly in Exhibit A to the Greenwood Deed of Trust (the "<u>Greenwood and Minter City Property</u>").

23. As further security for Borrowers' obligations to Plaintiff under the Notes and Loan Agreement, EGT also granted Plaintiff a first-priority security interest in certain real and personal property owned by EGT, pursuant to that certain Deed of Trust, Assignment of Leases and Rents and Fixture Filing from EGT for the benefit of Plaintiff, dated November 13, 2015 and filed of record November 13, 2015 in Deed of Trust Book 804, page 59 in the Chancery Clerk's Office for Leflore County (the as amended and modified, the "<u>Sidon Deed of Trust</u>"). The real property that is subject to the Sidon Deed of Trust is more particularly described in Exhibit A to the Sidon Deed of Trust (the "<u>Sidon Property</u>").

24. EB has leased certain Personal Property Collateral and a portion of the Greenwood and Minter City Property from EGT. As further security for Borrowers' obligations to Plaintiff under the Notes and Loan Agreement, EB granted Plaintiff a first-priority security interest in its leasehold interest in such Personal Property Collateral and in a portion of the Greenwood and Minter City Property, pursuant to that certain Leasehold Deed of Trust, Assignment of Leases and Rents and Fixture Filing executed by EB for the benefit of Plaintiff, dated May 10, 2018 and filed

of record May 10, 2018 in Deed of Trust Book 846, page 336 in the Chancery Clerk's Office for Leflore County (as amended and modified, the "Leasehold Deed of Trust"). The real property that is subject to the Leasehold Deed of Trust is described in Exhibit A to the Leasehold Deed of Trust and consists of a portion of the Greenwood and Minter City Property (the "Leasehold Property").

25. The property that is subject to the Greenwood and Minter Deed of Trust, the Sidon Deed of Trust, the Leasehold Deed of Trust (collectively, the "Deeds of Trust"), the property subject to the Pledge Agreement, and the Personal Property Collateral shall be referred to herein as the "Collateral."

26. In exchange for Plaintiff's extension of credit to Borrowers, John R. Coleman and Michael W. Coleman (together, the "Guarantors") executed that certain Third Amended and Restated Guaranty Agreement dated May 7, 2018 in favor of Plaintiff (the "Guaranty"). A true and accurate copy of the Guaranty is attached hereto as Exhibit H.

27. In the Guaranty, Guarantors guaranteed the prompt payment in full of all Borrowers' obligations to Plaintiff, which includes the Loans.

28. The Notes, Loan Agreement, Pledge Agreement, Deeds of Trust, and Guaranty, and all other documents referring to, relating to, or evidencing the Loans are hereinafter referred to as the "Loan Documents," and any capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Loan Documents.

29. Plaintiff is the owner and holder of the Loan Documents and is entitled to enforce the same.

30. For purposes of this Complaint, all of the amounts owed by Borrowers and Guarantors to Plaintiff under the Loan Documents shall collectively be referred to herein as the "Indebtedness." Under the Loan Documents, in addition to the Indebtedness, Borrowers and

Guarantors are obligated to reimburse the Plaintiff for costs and expenses incurred by Plaintiff in connection with the Indebtedness, including, without limitation, attorneys' fees and other costs of collection, and costs of insuring, protecting, maintaining, and/or disposing of the Collateral (together with the Indebtedness, collectively, all such amounts are referred to herein as the "Obligations").

31. In addition to the Obligations under the Loan Documents, EGT entered into one or more purchase and sale agreements involving commodities (the "Repo Agreements") with FC Stone Merchant Services, Inc. ("FC Stone") and Macquarie Commodities (USA) Inc. "Macquarie", and with FC Stone, the "Repo Lenders"). Pursuant to the Repo Agreements, prior to its bankruptcy filing, EGT would from time to time sell commodities, including, without limitation, soybeans, to the Repo Lenders on credit, with the option to repurchase such commodities from the Repo Lenders in the future. As evidence of such sales, EGT delivered to the Repo Lenders negotiable warehouse receipts evidencing the quantity of soybeans or other commodities sold to the Repo Lenders. EGT also issued warehouse receipts for soybeans or other commodities to Plaintiff.

32. In addition to the commodities represented by negotiable warehouse receipts, also prior to its bankruptcy filing, EGT also stored non-receipted soybeans and other commodities in one or more warehouses owned and/or operated by the company.

### A. The Defaults and Misrepresentations

33. Section 8.8 of the Loan Agreement requires that Borrowers provide annual audited financial statements within 120 days of the fiscal year ending December 31, 2020.

34. Borrowers did not provide their audited financial statements within 120 days of the fiscal year ending December 31, 2020.

35. Section 8.28 of the Loan Agreement requires that Borrowers enter into a swap transaction document within 90 days following the closing date to effectively fix or cap the interest rate payable on a portion of the outstanding principal balance of the Term Loan.

36. Borrowers have failed to enter into a swap transaction document within 90 days following the closing date.

37. Section 9.1 of the Loan Agreement requires that Borrowers do not exceed an aggregate of $50,000 in debt in the ordinary course of business, except as otherwise expressly permitted in such section.

38. As of the date hereof, Borrowers have incurred more than $50,000 in debt in the ordinary course of business that is not otherwise permitted by Section 9.1 of the Loan Agreement.

39. Section 10.4 of the Loan Agreement prohibits Borrowers from incurring capital expenditures exceeding $1,000,000.

40. As of the date hereof, Borrowers incurred capital expenditures exceeding $1,000,000.

41. Borrowers' failures to maintain compliance with the covenants referenced in paragraphs 33-40 are each an Event of Default under the Loan Documents.

42. The borrowing availability under the Revolving Loan was the lesser of the Revolving Loan Commitment or the Borrowing Base Amount. Exhibit A at 18. The Borrowing Base Amount was calculated pursuant to a formula set forth in the Loan Agreement. Exhibit A at 4-5. Among other things, the Borrowing Base calculation included the addition of 90% of the market value of the Borrowers' eligible inventory consisting of grain evidenced by warehouse receipts in favor of Plaintiff and 80% of the market value of the Borrowers' eligible inventory consisting of grain that is not evidenced by warehouse receipts.

43. In other words, the amount that Borrowers could borrow under the Revolving Loan was determined in part by the amount of Borrowers' eligible inventory, which consisted of the amount of non-receipted grain and receipted grain in favor of Plaintiff in their facility. To be included as eligible inventory, the inventory must be owned by a Borrower free and clear of any assignment, claim, or lien except a first-priority lien in favor of Plaintiff. Exhibit A at 11.

44. To determine the Borrowing Base Amount, under the Loan Agreement, Borrowers are required to provide a Borrowing Base Certificate certifying as true and complete by the president and controller of the Borrowers, the Borrowing Base Amount and each of its components. Exhibit A. at 5.

45. Under Section 8.15 of the Loan Agreement, Borrowers were required to provide a compliance certificate to Plaintiff within forty-five (45) days after the end of each fiscal quarter, containing a computation of the financial covenants and stating that such Borrower has not become aware of any Event of Default or unmatured Event of Default. Exhibit A, § 8.15.

46. On or about June 30, 2021, Borrowers provided Borrowing Base Certificate and Grain Inventory and Market Position Summary reflecting 2,025,410 bushels of soybeans at the company elevators, with warehouse receipts issued for 1,205,000 bushels and company owned soybean inventory of 820,410 bushels.

47. On or about August 23, 2021, EG executed a compliance certificate stating that for the twelve months ending June 30, 2021, EG had current assets of $64,335,846, and that it was in compliance with the Loan Agreement.

48. On or about September 1, 2021, Borrowers provided a Borrowing Base Certificate and Grain Inventory and Market Position Summary reflecting 2,238,359 bushels of soybeans at the company elevators, with warehouse receipts issued for 505,000 bushels, warehouse receipts to

Plaintiff for 685,000 bushels, and company owned soybean inventory of 1,048,359 bushels. Borrowers represented that the value of the company owned soybean inventory was $15,051,810, and that Borrowers had a total company owned and not warehouse receipted grain inventory of $16,096,761.

49. Also on or about September 1, 2021, Borrowers provided Plaintiff with a balance sheet listing total current assets of $57,676,879 as of July 31, 2021.

50. On September 22, 2021, Borrowers, through John Coleman, notified Plaintiff that the following was a summary of certain warehouse receipts for soybeans:

| UMB Bank, N.A. | 1,285,000 bushels |
| FCStone Merchant Services, LLC | 100,000 bushels |
| Macquarie Commodities (USA) Inc. | 200,000 bushels |

51. Plaintiff reviewed the electronic warehouse receipts available through eGrain, Inc., on September 23, 2021, which showed vastly different numbers for Borrowers' soybean warehouse receipts:

| UMB Bank, N.A. | 1,285,000 bushels |
| FCStone Merchant Services, LLC | 2,780,000 bushels |
| Macquarie Commodities (USA) Inc. | 850,000 bushels |

52. On September 23, 2021, Borrowers, through John Coleman, acknowledged to Plaintiff that the warehouse receipts listed on eGrain, Inc. were correct.

53. As September 23, 2021, the difference in value between what Borrowers initially reported as receipted commodities sold to the Repo Lenders and the value of the warehouse receipts actually held by the Repo Lenders is summarized as follows:

10

| Warehouse Receipt Holder | Borrowers' Reporting | eGrain, Inc. | Difference | Value/BU | Total Value |
|---|---|---|---|---|---|
| UMB Bank, N.A. | 1,285,000 | 1,285,000 | - | $12.84 | - |
| FCStone Merchant Services, LLC | 100,000 | 2,780,000 | (2,680,000) | $12.84 | (34,411.200) |
| Macquarie Commodities (USA) Inc. | 200,000 | 850,000 | (650,000) | $12.84 | (8,346,000) |
| Total | 1,585,000 | 4,915,000 | (3,330,000) | $12.84 | (42,757,200) |

54. Thus, Borrowers made material misrepresentations regarding the receipted commodities sold to the Repo Lenders by an amount exceeding $42,000,000.

55. By underreporting the receipted commodities sold, Borrowers overstated the amount of Borrower-owned commodities and eligible inventory. In other words, Borrowers represented that the commodities sold to the Repo Lenders were still owned by Borrowers, when in fact, they were not. As a result of the misstated receipted commodities, the company owned inventory reported by Borrowers in borrowing base certificates, compliance certificates, and financial statements are also false.

56. Under Section 11.2 of the Loan Agreement, it is an Event of Default for Borrowers or Guarantors to make any false, incomplete, inaccurate, or misleading statement or representation to Plaintiffs.

57. Borrowers' misrepresentations to Plaintiff regarding the eligible grain inventory is an Event of Default under the Loan Documents.

58. The filing of bankruptcy petitions by Borrowers and John Coleman each constitute Events of Default under the Loan Documents.

59. The Loans are in default due to the occurrence of the Events of Default set forth in this Complaint.

60. By letter dated September 24, 2021, Plaintiff notified Borrowers and Guarantors that because of the occurrence of the Event of Default, among other reasons, Plaintiff had elected to accelerate the Indebtedness, and declared all amounts owing under the Loan Documents immediately due and payable in full. A true and accurate copy of the default letter is attached hereto as Exhibit I.

**B.     Bankruptcy Liquidation**

61. As part of its bankruptcy proceedings, the assets and collateral of Borrowers were liquidated as follows.

62. With regard to physical grain assets, on May 2, 2022, the Bankruptcy Court issued a Memorandum Opinion and Order Approving Joint Application to Compromise Controversy (the "Settlement Order"), which approved the allocation and distribution of the proceeds of the sale of all of Borrowers' physical grain amongst all parties that asserted an interest in the same, including Plaintiff. The share allocated under the Settlement Order to Plaintiff has been received and applied to the Obligations.

63. With regard to all other assets, on February 16, 2022, Express Grain Terminals, LLC ("EGT") filed a Motion to Sell Substantially All of the Assets Owned by Express Grain Terminals, LLC, Free and Clear of Liens, Claims, and Interests, with Liens Attaching to Proceeds of Sale, Outside the Ordinary Course of Business, with the Bankruptcy Court. The auction of substantially all of EGT's assets took place on February 25, 2022 under the supervision of the Bankruptcy Court. At the auction, Plaintiff submitted the highest and best bid of all of EGT's assets for which Plaintiff asserted a lien ("UMB Credit Bid").

12

Case 4:22-cv-00550-BCW     Document 1     Filed 08/24/22     Page 12 of 17

KC 18008776.5

64. On April 11, 2022, the Bankruptcy Court entered its Order Granting Motion to Sell Substantially All of the Assets Owned by Express Grain Terminals, LLC, Free and Clear of Liens, Claims and Interests, with Liens Attaching to Proceeds of Sale, Outside the Ordinary Course of Business ("Sale Order"), which confirmed the UMB Credit Bid. The Sale Order, among other things, authorized Plaintiff to assign its purchase rights (the "Purchase Rights") to other parties.

65. On June 13, 2022, EGT and Plaintiff filed their Joint Motion to Clarify Order Granting Motion to Sell Substantially All of the Assets Owned by Express Grain Terminals, LLC, Free and Clear of Liens, Claims and Interests, with Liens Attaching to Proceeds of Sale, Outside the Ordinary Course of Business, as well as a Notice of Assignment of Purchase Rights, pursuant to which EGT and Plaintiff gave notice of, among other things, the proposed assignment of certain rights to Thoroughbred AgriFuel Holdings LLC ("Thoroughbred"). On June 24, 2022, the Bankruptcy Court entered its Order Granting Joint Motion to Clarify Order Granting Motion to Sell Substantially All of the Assets Owned by Express Grain Terminals, LLC, Free and Clear of Liens, Claims and Interests, with Liens Attaching to Proceeds of Sale, Outside the Ordinary Course of Business and Notice of Assignment of Purchase Rights.

66. Thereafter, pursuant to the Bankruptcy Court's orders, Plaintiff sold its purchase rights for EGT's facilities in Sidon and Minter City to Delta Grain Leasing Company, LLC and Delta Grain Company, LLC. Plaintiff transferred its purchase rights in the other EGT assets (located at the Greenwood facility) to GSMC SPE, LLC ("GSMC"). GSMC was a wholly owned entity of UMB; however, such ownership interests in GSMC has been transferred to Thoroughbred, effective July 29, 2022.

67. All amounts allocated to Plaintiff on account of the sale of Borrowers' assets, as described in this subsection B, have been received and applied to the Obligations.

68. Excluding attorneys' fees and other expenses that Plaintiff has incurred to pursue collection, accounting for as of August 22, 2022, the total amount due on the Loans was as follows:

| Note | Principal | Accrued Interest | Total |
|---|---|---|---|
| Revolving Loan | $ 24,803,664.72 | $ 1,657,840.67 | $ 26,461,505.39 |
| Term Note | $ 8,831,358.64 | $ 1,355,670.54 | $ 10,187,029.18 |
| Overdraft liability | $ 1,775,173.91 | - | $ 1,775,173.91 |
| Overdraft liability | $ 90,297.33 | - | $ 90,297.33 |
| **TOTAL** | **$ 35,500,494.60** | **$ 3,013,511.21** | **$ 38,514,005.81** |

69. Interest is accruing on the Loans pursuant to the terms of the Loan Documents.

70. Plaintiff has taken steps to enforce and protect its rights, and it has retained counsel for the purpose of assisting it in attempting to collect the amounts owed under the Loan Documents. In so doing, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses.

## COUNT I
## BREACH OF GUARANTY

71. Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

72. Defendant executed the Guaranty in exchange for the extension of credit to Borrowers, including the Loans.

73. Plaintiff is the holder of the Loan Documents and the Guaranty.

74. Borrowers are in default under the Loan Documents. Accordingly, Plaintiff accelerated the balance due under the Notes and made demand for immediate payment from Defendant.

14

Case 4:22-cv-00550-BCW    Document 1    Filed 08/24/22    Page 14 of 17

KC 18008776.5

75. By failing to repay the Loans after demand, Defendant materially breached the Guaranty.

76. Accordingly, Plaintiff demands judgment against Defendant for breach of contract under the Guaranty in the amount of $38,514,005.81, together with all accruing interest and costs, including, without limitation, default interest, prepayment premiums, attorneys' fees, and all expenses incurred by Plaintiff in collecting the Obligations.

WHEREFORE, Plaintiff respectfully requests the Court entered judgment in favor of Plaintiff and against Defendant Michael W. Coleman for (a) $38,514,005.81; (b) interest that accrues on the principal balances of the Loans after August 22, 2022; (c) expenses including, without limitation, reasonable attorneys' fees and expenses relating to the Loan Documents that Plaintiff has incurred and will incur to protect or enforce its rights related to the Loan Documents; (d) any other amounts that Defendant is obligated to pay Plaintiff under the Guaranty; and (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

DATED: August 24, 2022

Respectfully submitted,

/s/ Peter Riggs
Peter L. Riggs, MO #57268
Eric L. Johnson, MO 53131
Andrea Chase, MO #66019
SPENCER FANE LLP
1000 Walnut St., Suite 1400
Kansas City, Missouri 64106
Telephone: 816.474.8100
Facsimile: 816.474.3216
priggs@spencerfane.com
ejohnson@spencerfane.com
achase@spencerfane.com

16

## VERIFICATION

I, Wayne Lewis, Senior Vice President Agribusiness Division of UMB Bank, N.A. ("Plaintiff"), having first been duly sworn, and being authorized to make this statement, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of Plaintiff that were kept as a regular practice of Plaintiff in the course of Plaintiff's regularly conducted business activity and that were made at or near the time of the occurrence of the matters set forth, the facts stated in the Complaint are true, and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of Plaintiff.

*Wayne C. Lewis*
Wayne C. Lewis

STATE OF __MO__
COUNTY OF __Jackson__

Sworn to and subscribed before me this 23 day of August, 2022.

*Beth Moore*
Notary Public

My Commission Expires:

__2/22/25__

> Beth Moore
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires: Feb. 22, 2025
> Commission # 13394746

17